594 A.2d 737

**Jeremiah ANDERSON and Linda Anderson, his Wife**

v.

**CENTENNIAL HOMES, INC., Appellant.**

Superior Court of Pennsylvania.

Submitted May 9, 1991.

Filed Aug. 7, 1991.

Michael R. Mey, Wilkes–Barre, for appellant.

Steven D. Gladstone, Tannersville, for appellees.

Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

Centennial Homes, Inc. ("Centennial") appeals from an order entered in the Monroe County Court of Common Pleas denying its motion to reinstate its appeal and denying its motion to open a default judgment. We affirm.

On July 17, 1989, Jeremiah and Linda Anderson filed an action against Centennial before District Justice Charles P. Eyer. In their complaint, the Andersons claimed that Centennial wrongfully removed trees from their property. A hearing was scheduled for September 1, 1989 at which time judgment was entered against Centennial for failure to appear. *See* Pa.R.C.P.D.J. 319 B. On September 12, 1989, Centennial filed a notice of appeal to the Monroe County Court of Common Pleas. On September 19, 1989, notice of Centennial's appeal and rule to file complaint was served upon the district justice and the Andersons. It is unclear from the record if proof of service of the copies of the

notice of appeal and rule to file complaint was ever filed with the Monroe County Prothonotary. In any event, on October 3, 1989, Centennial's appeal was stricken for failure to comply with Pennsylvania Rule of Civil Procedure for District Justices 1005B. *See* Pa.R.C.P.D.J. 1006.[1] Centennial thereafter filed a motion to open judgment or reinstate the appeal. The trial court denied both motions and this timely appeal followed.[2] On appeal, Centennial raises the following issue:

Is the Appellant entitled to have the Judgment entered against it opened and/or have its appeal reinstated?

Centennial argues that although it did not technically comply with Pa.R.C.P.D.J. 1005 B, since the Andersons did receive actual notice of Centennial's appeal to the court of common pleas and because the Andersons suffered no prejudice, its appeal should be reinstated. Centennial reminds us that Pennsylvania Rule of Civil Procedure 126 allows the trial courts to disregard "any defect or rule of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. 126.

Centennial concedes that it did not comply with Pa.R.C.P.D.J. 1005 B. Namely, Centennial did not file proof of service of copies of its notice of appeal and rule to file a complaint with the prothonotary of Monroe County within five days after filing its notice of appeal. At the Andersons' request and pursuant to Pa.R.C.P.D.J. 1006, Centennial's appeal was stricken for failure to comply with rule 1005 B. Pa.R.C.P.D.J. 1006, however, provides that the "court of common pleas *may* reinstate the appeal upon *good cause* shown." Pa.R.C.P.D.J. 1006 (emphasis added).

1. Pa.R.C.P.D.J. 1006 provides:
   Upon failure of the appellant to comply with Rule 1004 A or Rule 1005 B, the prothonotary *shall,* upon praecipe of the appellee, mark the appeal stricken from the record. The court of common pleas may reinstate the appeal upon good cause shown.
   Pa.R.C.P.D.J. 1006 (emphasis added).

2. We note that an order denying a motion to reinstate an appeal is a final order for purposes of appeal. *Jay Dee Department Store v. Penn Gas,* 362 Pa.Super. 404, 524 A.2d 940 (1987).

"Good cause" is not defined in the rules governing district justice proceedings. Black's Law Dictionary defines good cause as a

> [s]ubstantial reason, one that affords a legal excuse. Legally sufficient ground or reason. Phrase "good cause" depends upon circumstances of individual case, and finding of its existence lies largely in discretion of officer or court to which decision is committed.... "Good cause" is a relative and highly abstract term, and its meaning must be determined not only by verbal context of statute in which term is employed but also by context of action and procedures *involved in type of case presented....*

Black's Law Dictionary 623 (5th ed. 1979) (emphasis original citations omitted). While the term good cause may be difficult to define, it is clear that Centennial must proffer some legally sufficient reason for the trial court to reinstate its appeal. We also emphasize that the determination of whether good cause has been demonstrated is trusted to the trial court's sound discretion. *See State Farm Insurance Companies v. Swantner,* 406 Pa.Super. 235, 594 A.2d 316 (1991) (en banc) (giving trial court's broad discretion to determine whether good cause has been demonstrated to compel an insured to submit to an independent medical examination). Centennial, however, offered no explanation to the trial court, or to this court, for its failure to file proof of service of copies of its notice of appeal and rule to file complaint within five days after filing its notice of appeal. Clearly, in attempting to demonstrate good cause for reinstating an appeal, Centennial should explain its reasons, if any, for failing to comply with the provisions which caused the appeal to be stricken. Centennial, rather than attempting to explain its reasons for not complying with rule 1005B, merely claims that since it acted as diligently as possible under the circumstances and since the Andersons' rights were not substantially affected by its noncompliance, its appeal should be reinstated.

■ Rule 1006 is discretionary with the trial court and is intended to provide sanctions for failing to act within the prescribed time limits of the relevant rules of procedure. Pa.R.C.P.D.J. 1006, note. Pa.R.C.P. 126, which allows the trial court to disregard procedural errors which do not substantially affect the rights of the parties, is likewise discretionary with the trial court. We remind Centennial that while the trial court may ignore procedural noncompliance, it is not required to do so. *See* Pa.R.C.P. 126. Here, Centennial, without an explanation, failed to comply with rule 1005 B. We find that simply stating that the instant noncompliance did not substantially affect the rights of the Andersons is not alone sufficient to demonstrate good cause to reinstate the appeal. In short, we cannot find that under the circumstances the trial court abused its discretion when it refused to reinstate Centennial's appeal. *Cf. Friedman v. Lubecki*, 362 Pa.Super. 499, 524 A.2d 987 (1987) (discussing good cause for failure to comply with Pa.R.C.P.D.J. 1004 A); *Quarato v. Facelifters*, 305 Pa.Super. 536, 451 A.2d 777 (1982) (appeal reinstated where appellants essentially complied with Pa.R.C.P.D.J. 1005 B, but failed to attach sender's receipt to affidavit as required by Pa. R.C.P.D.J. 1001). *See also* 25 Standard Pennsylvania Practice 2d § 130:166 (1984) ("An appeal from a decision of a district justice which has been stricken should be reinstated only under exceptional circumstances").

■ Centennial also claims that the trial court erred in refusing to open the default judgment entered by the district justice. This argument, however, is misplaced. A petition to open a default judgment is initially presented to the court which entered the default judgment. *See Deviney v. Lynch*, 372 Pa. 570, 94 A.2d 578 (1953); *Lance v. Mann*, 360 Pa. 26, 60 A.2d 35 (1948); *see also* 12 Standard Pennsylvania Practice § 71:39 (1983) (unless otherwise provided by statute, it is not within the power of one court to open the judgment of another court). As such, a petition to open judgment is an appeal to that court's equitable powers. *Hanna v. Dey Computer Systems, Inc.*, 386 Pa.Super. 8,

562 A.2d 327, 328 (1989). Here, the default judgment was entered by the district justice when Centennial failed to appear. *See* Pa.R.C.P.D.J. 319 B. This judgment was appealed to the Monroe County Court of Common Pleas. A properly executed appeal to a court of common pleas permits a *de novo* proceeding and, unless the judgment is for the possession of real property, operates as an automatic supersedeas. Pa.R.C.P.D.J. 1008, 1008 B. *See* 25 Standard Pennsylvania Practice § 130:167 (1984). Consequently, it would seem needless to file a petition to open judgment entered by a district justice when an appeal from that judgment to the court of common pleas results in a *de novo* proceeding that stays the previous judgment.

■ Moreover, the relevant rules of procedure governing district justice proceedings do not provide for motions to reconsider judgments entered. *See* Pa.R.C.P.D.J. 1 *et seq.* Appealing the district justice judgment to the relevant court of common pleas, not asking the district justice to reconsider its ruling, is the proper method of obtaining review of the judgment. Again, since a properly executed appeal from a judgment entered by a district justice results in a *de novo* proceeding in the court of common pleas, such motions for reconsideration would be superfluous. Clearly, since the case is tried *de novo* in the court of common pleas, the effect of reinstating Centennial's appeal to the court of common pleas is to suspend the effect of the default judgment entered by the district justice. *See* Pa.R.C.P.D.J. 1007.

■ Unfortunately, Centennial failed to perfect its right to appeal the district justice judgment, and has failed to demonstrate that the trial court abused its discretion in denying its request to reinstate the appeal. Plainly, if the appeal is stricken the district justice judgment remains final. *See* Pa.R.C.P.D.J. 1008 C ("If an appeal is stricken, ... any supersedeas based on it shall terminate"). Further, if the court of common pleas has declined to reinstate Centennial's appeal, it has no jurisdiction to entertain petitions to open a judgment which it has declined to review.

Here, Centennial, in an apparent effort to pursue all possible avenues of relief, simultaneously argued that its appeal should be reinstated and that the judgment should be opened. However, as stated earlier, we find that where the appeal is not reinstated, a petition to open the judgment which was the subject of the attempted appeal, should not, and indeed cannot, properly be entertained.

Order affirmed.