**James ELLENBOGEN, Executor of the Estate of Edgar S. Ellenbogen, Appellant,**

v.

**PNC BANK, N.A., Appellee.**

Superior Court of Pennsylvania.

Argued April 6, 1999.
Filed May 28, 1999.

---

Mark T. Knapp, Allison Park, for appellant.

Jonathan S. McAnney, Pittsburgh, for appellee.

Before POPOVICH, LALLY–GREEN, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 James Ellenbogen appeals from two Motions Court orders, one overruling his preliminary objections (PO's) to PNC Bank's PO's, and the other sustaining PNC's PO's to Ellenbogen's amended complaint and dismissing his amended complaint with prejudice. We reverse and remand.

¶ 2 Ellenbogen commenced this suit against PNC by filing a praecipe for a writ of summons. PNC was served eight days later, and counsel entered his appearance. Ellenbogen then served upon PNC a subpoena and notice of deposition of a bank employee for the following month. Shortly before the deposition, PNC filed a Praecipe for Rule to File Complaint, averring that allowing the deposition of the bank employee would be unfair since PNC was still unaware of the substance of the suit, no complaint having been filed. The court quashed the subpoena and continued the deposition until after Ellenbogen filed his complaint.

¶ 3 Ellenbogen then filed a complaint in his capacity as executor of the estate of his father, Edgar Ellenbogen ("Edgar"). He averred PNC had breached various duties by allowing his father's wife, Jacqueline Ellenbogen ("Jacqueline"), unauthorized access to his father's safe deposit box, held solely in his father's name, just before he died. He alleged that after initially being denied access to the box because she was not authorized, Jacqueline inquired how she could gain access to it. A named PNC employee allegedly gave her a written safe deposit box lease application and told her to fill it out in both names, thus transferring the box from Edgar's name alone to both of their names and allowing her access. She took this application home and purportedly forced Edgar to sign it. The bank did not require him to appear in person and did not otherwise verify that he had willingly signed the application before accepting and honoring it. Jacqueline then opened the box, read for the first time the decedent's will contained in it, and allegedly forced Edgar to make changes to it. A separate action has been filed contesting the will due to these allegedly improper changes to the will and to a related deed. Such changes, the complaint averred, were made possible by PNC's breach. The damages claimed by Ellenbogen were the legal expenses and costs incurred by the estate in the separate will contest action.[1]

¶ 4 PNC responded with PO's to the original complaint in the nature of a demurrer. As to bailment, it noted the safe deposit box agreement disclaimed the creation of one. Even if a bailment existed, PNC alleged there was no breach because the contents of the box had been returned without damage or loss. As to breach of contract, PNC averred that the deposit

---

1. In the original complaint, the counts read:
 Count 1: Breach of Bailment,
 Count 2: Breach of Contract, and
 Count 3: Negligence.

Copies of both the original and amended safe deposit box agreements were attached to the complaint.

box agreement limited the bank's liability[2] and that case law limits such loss only to non-delivery of, or damage to, the personalty deposited in the box. As to negligence, the bank represented that Ellenbogen was pleading purely economic loss in negligence, in violation of the "economic loss" doctrine as stated in *Aikens v. Baltimore and Ohio Railroad Co.*, 348 Pa.Super. 17, 501 A.2d 277 (1985). Finally, the bank noted the absence of authority for liability on the part of a bank for attorney's fees in an unrelated action based upon unauthorized access to a safe deposit box, where the contents of the box were not lost or damaged but merely read. The then-sitting Motions Judge, the Honorable S. Louis Farino of the Court of Common Pleas of Allegheny County, entered a succinct order sustaining this first set of PO's and allowing Ellenbogen 30 days to amend his complaint.

¶ 5 Ellenbogen filed an amended complaint four days after the 30–day deadline set by Judge Farino. He did not therein address the points raised in PNC's sustained demurrer.[3] In response, PNC filed what it termed a "Motion to Strike Amended Complaint" in which it raised the sole issue of Ellenbogen's failure to comply with Judge Farino's 30–day deadline. The Honorable Ronald W. Folino, then sitting as Motions Judge, in another succinct order, denied PNC's motion. He gave no further instruction as to how the case was to proceed.

¶ 6 PNC then filed what it termed "Preliminary Objections" to Ellenbogen's amended complaint, asserting primarily that Ellenbogen's failure to amend his complaint substantially (*see* note 3 *supra*) rendered the demurrer to his original complaint the law of the case. Therefore, it claimed, dismissal was mandatory.

¶ 7 Ellenbogen responded with PO's to PNC's PO's to the amended complaint.[4] Therein, Ellenbogen averred that PNC's motion to strike should have been, and was in effect, a form of preliminary objection to his amended complaint. He claimed PNC's motion to strike was chronologically its second set of preliminary objections (its first having been filed in response to the original complaint) and was its first set of preliminary objections in response to the amended complaint. Only one set of preliminary objections is permitted to the amended complaint, he averred, and PNC's PO's in the nature of a motion to strike the amended complaint had already been denied. Therefore, Ellenbogen requested that PNC's chronologically third set of preliminary objections, its second to the amended complaint, should be dismissed as waived and PNC be made to answer.

¶ 8 A different Motions Judge, the then-sitting Honorable Judith L.A. Friedman, soon held a brief hearing on both PNC's and Ellenbogen's outstanding PO's. Ellenbogen's attorney, however, did not appear. Court staff telephoned his office to no avail, and the hearing (a dialogue solely between the judge and counsel for PNC) proceeded without him. The court began by stating, "[Ellenbogen's attorney] did file objections to what he refers to as two new numbered paragraphs (regarding reckless indifference, outrageous conduct, and punitive damages) under the negligence count. None of the points stated in PNC's first set of PO's (demurrer) were addressed.

---

2. Paragraph ten of the agreement, in pertinent part, limits liability to "loss caused by neglect to exercise ordinary care and diligence to prevent the opening of the box by any person other than the lessee."

3. In his amended complaint, the counts read:
 Count 1: Breach of Bailment, and
 Count 2: Negligence.
 There were only two differences between Ellenbogen's amended complaint and his original complaint. The amended complaint did not contain the breach of contract claim. Additionally, the amended complaint included

4. He did not serve them on PNC or its counsel, and no certificate of service is attached to the record original. His PO's appear to have been filed one week before the hearing date. The cover sheet is date-stamped with two different dates: once as of one week before the hearing, and once as of the hearing date.

Third Preliminary Objections, the second document entitled Preliminary Objections, but in a way, it is a third set because the motion to strike, I think, was in the nature of Preliminary Objections." Of PNC's PO's and its earlier motion to strike, Judge Friedman stated that "that should have all been done at once." Although she noted that Ellenbogen's attorney's absence resulted in the waiver of his PO's to PNC's PO's to the amended complaint, she still considered whether PNC's motion to strike the amended complaint had been a form of preliminary objection and thus, whether PNC's subsequent PO's to the amended complaint were not properly before her. Initially, she found the motion to strike was a form of preliminary objection. She thus initially concluded that she could not consider PNC's PO's to the amended complaint and that PNC should answer.[5]

¶ 9 However, after consulting a source not of record, the court changed its mind and became convinced that PNC's counsel was correct in representing that a pre-trial motion to strike is not a form of prelimi-

nary objection.[6] The court thus concluded that PNC's third set of PO's were actually only its second (and its first to the amended complaint). At this time the court entered an order finding Ellenbogen's PO's to PNC's PO's "overruled for failure to appear."

¶ 10 The court's record statement makes it quite clear that it was only after coming to, and in reliance upon, the conclusion that a pre-trial motion to strike is *not* a form of preliminary objection, that it reached the substance of PNC's PO's to the amended complaint. The court then entered an order sustaining PNC's PO's to the amended complaint and dismissing Ellenbogen's amended complaint for failure to amend, with prejudice. Both orders were dated and entered September 10, 1998.

¶ 11 Fifteen days later, Ellenbogen filed a motion for reconsideration. He represented that "[b]ecause of a communication problem in his office, counsel for Plaintiff did not diary this date properly, was not in town, and thus failed to appear

---

5. The judge considered herself bound to address the issue regardless of the unexplained absence of Ellenbogen's attorney:

> THE COURT: So to that extent, Mr. Knapp, who is not here to proceed, is making a correct argument.
> MR. MCANNEY [Counsel for PNC]: Is that what he has raised in his response?
> THE COURT: Yes. That's what he is saying. **He is not here to pursue those, so I can disregard his Preliminary Objections, but I'm still stuck anyhow,** because when the Motion to Strike for non-compliance with Judge Farino's Order was denied, there should have been an Answer filed. . . .
> \* \* \*
> The rules don't give you leave to file any other Preliminary Objections. The only document I should be looking at here—I mean, I shouldn't even be looking at the document. The only document that should have been filed is an Answer, or a Motion to Judge Folino to reconsider, which is now too late. It can't be done.
> \* \* \*
> MR. MCANNEY: I know you have to raise them all at the same time. That's the rule[ ]. But since that Motion to Strike was not a Preliminary Objection—

> THE COURT: It was in the nature of a Preliminary Objection. It should have been a Preliminary Objection. That's how you make a Motion to Strike for something out *of time, it's by Preliminary Objections.*
> (Emphasis added).

6. The only record indication of or explanation for the shift in the court's position follows:

> MR. MCANNEY: Well, I think when there is a Pleading filed in violation of a Court Order, what I thought was in violation, Judge Folino disagreed, but it's not in the nature of a—
> THE COURT: It's not—you are saying it's not a preliminary objection? Let me just double-check. Because if it's not, then **since he is not here to proceed**—let me just look.
> You are right. Motion to Strike is not a Preliminary Objection. Okay.
> **In that case, since Mr. Knapp is not here,** and he has had the luck of having 20 more minutes to get here than ordinarily would be given, his Preliminary Objections are overruled for failure to appear. Sorry to give you a fright.
> (Emphasis added.) There is no record explanation of what source the judge consulted.

at said hearing." As to PNC's alleged waiver of its "third" set of PO's, without citation to authority, Ellenbogen stated that "[t]he case law, in this circumstance, notes that the demur[r]er may be raised later as a summary judgment motion, but that Defendant can[ ]not do it at this time and must answer." PNC responded a week later, without citation to authority, that Ellenbogen's reconsideration motion, as a post-trial motion, was untimely, for it had been filed beyond a ten-day period from the order sustaining PNC's PO's to his amended complaint.[7] PNC also maintained its motion to strike simply could not be viewed as a form of preliminary objection. Finally, it averred that Ellenbogen had twice been notified of the hearing date which he had missed: first by cover letter to PNC's PO's, and second, in accordance with Allegheny County Local Rule 1028(e), when he filed his PO's to PNC's PO's to the amended complaint.[8]

¶ 12 On October 8, 1998, the court denied Ellenbogen's motion for reconsideration and issued a memorandum opinion. In this opinion, the court did not address the question it had considered preliminarily and as a threshold issue at the hearing, whether PNC's motion to strike had been a form of preliminary objection. Instead, the court stated simply that Ellenbogen's excuse for failure to appear was not satisfactory under Pennsylvania Rule of Civil Procedure 218; that it had considered Ellenbogen's PO's to PNC's PO's to the amended complaint in any event and had found them to be without merit; and iterated that, as a court of coordinate jurisdiction, it was constrained to agree with Judge Farino's earlier order sustaining PNC's PO's in the nature of a demurrer to the original complaint, since Ellenbogen's amended complaint had not corrected the defects which had led to the earlier demurrer.

¶ 13 Ellenbogen then simultaneously filed two separate and timely[9] notices of appeal: one from the order denying his PO's to PNC's PO's to the amended complaint for his failure to appear, and the other from the court's order both granting PNC's PO's to the amended complaint and dismissing the amended complaint. The former appeal was docketed at our appellate docket # 1872 Pittsburgh 1998, and the latter consecutively at # 1873. Several months thereafter, we *sua sponte* dismissed the appeal at docket # 1872 as duplicative and unnecessary.[10] Upon the

---

7. On the contrary, however, "[a] motion for reconsideration is not a post-trial motion. A motion for reconsideration is addressed to the sound discretion of the trial court and may be filed within thirty days of the date of the order upon which reconsideration is sought." *Moore v. Moore*, 535 Pa. 18, 25, 634 A.2d 163, 166 (1993). *See* Pa.R.A.P. 1701(b)(3) (application for reconsideration must be filed within time prescribed by law, and order stating on its face that reconsideration is expressly granted, must be filed within time permitted for filing appeal). *See also Hutchison by Hutchison v. Luddy*, 417 Pa.Super. 93, 611 A.2d 1280 (1992) (30 days for final, appealable order).

8. We have no indication of whether it was Ellenbogen or an office staff member who actually read the cover letter, or who filed the PO's to PO's.

9. Although filed 33 days after the September 10 orders, they were timely due to the Monday, October 12, 1998 Columbus Day holiday. *Bassett v. Bassett*, 543 Pa. 323, 671 A.2d 661 (1995); Pa.R.A.P. 903; 1 Pa.C.S. § 1908. The motion for reconsideration never having been expressly granted by an order so stating while it was under consideration, it had no effect on the appeal period. Pa.R.A.P. 1701.

10. In doing so, this court was under the mistaken impression that the Motions Court had entered one order, from which two appeals had been taken. However, in ruling on Ellenbogen's subsequent motion to reinstate the appeal at # 1872, our court specifically stated that any otherwise properly preserved issue regarding this case might be raised at # 1873. Although the Motions Court signed two separate orders, they were entered at the same time and during the same hearing. We find, therefore, that both orders are properly before our court, and we treat them as one order, at our docket # 1873 Pittsburgh 1998. The dismissal of docket # 1872, in other words, does not preclude us from considering the propriety of the Motions Court's order overruling Ellenbogen's PO's to PNC's PO's due to his attorney's failure to appear.

trial court's order immediately after he filed his notices of appeal, Ellenbogen promptly filed a concise statement of matters complained of on appeal, the first of which stated: "The court committed error at law in apparently concluding that a motion to strike for untimeliness is not an objection within the meaning of Pa.R.C.P. 1028(a)(2)." Similarly, on appeal, Ellenbogen asks us solely to determine "[w]hether a Motion to Strike for untimeliness is an objection within the meaning of Pa.R.C.P. 1028(a)(2)."

■■■ ¶ 14 Our standard of review mandates that "[o]n an appeal from an [o]rder sustaining preliminary objections [which would result in the dismissal of suit], we accept as true all well-pleaded material facts set forth in the appellants' complaint and all reasonable inferences which may be drawn from those facts." *Filipovich v. J.T. Imports, Inc.*, 431 Pa.Super. 552, 637 A.2d 314 (1994). This standard is equally applicable to our review of PO's in the nature of a demurrer. *Miller v. Peraino*, 426 Pa.Super. 189, 626 A.2d 637 (1993). Where, as here, upholding sustained preliminary objections would result in the dismissal of an action, we may do so only in cases that are clear and free from doubt. *Baker v. Cambridge Chase*, 725 A.2d 757, 764 (Pa.Super.1999); *Ambrose v. Cross Creek Condominiums*, 412 Pa.Super. 1, 602 A.2d 864, 869 (1992).

To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. *See Vitteck v. Washington Broadcasting Co., Inc.*, [ ], 256 Pa.Super. 427, 389 A.2d 1197, 1199 (1978). Any doubt should be resolved by a refusal to sustain the objections. *Id.*

*McGuire v. Shubert*, 722 A.2d 1087, 1090 (Pa.Super.1998). We review for merit and correctness—that is to say, for an abuse of discretion[11] or an error of law. *Baker, supra.* This case was dismissed at the preliminary objections stage on issues of law; our scope of review is thus plenary. *Thornburgh v. Lewis*, 504 Pa. 206, 470 A.2d 952 (1983); *Borden, Inc. v. Advent*, 701 A.2d 255 (Pa.Super.1997).

■■ ¶ 15 We may dispose of one portion of this case quickly. We need not consider the court's order finding Ellenbogen's PO's to PNC's PO's were waived due to the unexcused absence of his attorney. That order is moot. Before entering it, the Motions Court had already *sua sponte* raised and ruled upon the only issue raised in Ellenbogen's PO's to PNC's PO's, *viz.* whether PNC's motion to strike was legally a form of preliminary objection, and thus whether PNC's PO's to the amended complaint had been waived.[12] For this reason, and under these unique facts, we

---

11. Our supreme court's comments upon the following *P.L.E.* definition provide a helpful alternative to the legalistic phrase "abuse of discretion":

> Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*P.L.E. New Trial* § 2. One way of summing up all the qualities described in this definition of a valid exercise of discretionary power is to say that **the decision had merit**. Conversely, if the reason for performing a discretionary act **had no merit**, then the trial court abused its discretion. Thus, when viewed in terms of the degree of scrutiny that should be applied, **an inquiry into an abuse of discretion is operationally equivalent as one into the merit of the trial court's decision.**

*Coker v. S.M. Flick[i]nger Co.*, 533 Pa. 441, 447–48, 625 A.2d 1181, 1185 (precise usage and spelling in original) (emphasis added).

12. We do not conclude from the record before us that the Motions Court considered the merits of Ellenbogen's PO's before finding them waived. The Motions Court's statement in its opinion to us that it did so merely indicates that it considered the issue, not the pleading. The court plainly viewed the issue as being of sufficient importance to warrant raising it *sua sponte*, quite apart from any consideration of Ellenbogen's PO's or his absence. By doing so, the court in effect found that issue non-waivable.

need not consider the court's order overruling Ellenbogen's PO's to PNC's PO's for his attorney's failure to appear.[13]

¶ 16 We next turn to the order sustaining PNC's PO's and dismissing the amended complaint for Ellenbogen's failure to amend. Facially, it would appear Ellenbogen has abandoned his challenge to this order on appeal, for he does not address the issue of his failure to amend. However, the issue raised by Ellenbogen is the same as that utilized by the court as a threshold question. The court only considered PNC's PO's to the amended complaint because it had first concluded that, legally, a motion to strike for failure to follow a court-set deadline is not a form of preliminary objection. Because the court followed this unusual procedure, Ellenbogen has, by raising solely the same threshold issue of law, questioned the propriety of the court's considering PNC's PO's, and also of its dismissing the amended complaint on the merits of PNC's PO's.

¶ 17 PNC, for its part, considers in its brief neither the issue of whether its motion to strike the amended complaint was a form of preliminary objection, nor the propriety of the court's procedure in raising the issue *sua sponte*.[14] The Motions Court has also neither addressed the issue nor referred to the procedure it utilized at the hearing, whether in its Pa.R.A.P.1925(a) opinion to us, its opinion explaining denial of reconsideration, or its initial orders. It was the threshold issue at the hearing; it was the primary issue in Ellenbogen's reconsideration motion; and it was the primary matter complained of on appeal. Nonetheless, the absence of a further Motions Court statement on the issue has not hindered our review, and we proceed. *Commonwealth v. Cortes*, 442 Pa.Super. 258, 659 A.2d 573 (1995).

■ ¶ 18 The court's record statements are sufficient to show that it would not have considered PNC's PO's to the amended complaint at all, had it found that PNC's earlier motion to strike was a form of preliminary objection. As to whether or not she could even consider PNC's PO's to the amended complaint after finding Ellen-

13. Because this order is moot, we express no opinion on the question whether, at this pretrial stage, without prior inquiry as to notice, it was within the court's discretion to refuse to consider the substance of Ellenbogen's PO's to PO's due to his absence. PNC cites no authority for its position on this point. *See Anderson v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 432 Pa.Super. 54, 637 A.2d 659, 660 (1994) ("Counsel is under the same duty to appear at conciliatory or pre-trial conferences as he or she is to appear for trial."); *Steinfurth v. LaManna*, 404 Pa.Super. 384, 590 A.2d 1286, 1290 (1991) (balancing analysis applies to waiver for failure to appear); Pa.R.C.P. 218 (effect of failure to appear for trial). *Cf. Pantoja v. Sprott*, 721 A.2d 382 (Pa.Super.1998) (absence at arbitration proceeding not prejudicial for trial *de novo* purposes).

Nor need we consider PNC's prior argument that it was within the court's discretion to refuse to consider the pleading because Ellenbogen had failed to serve it upon opposing counsel. *See Sharp v. Valley Forge Medical Center & Heart Hosp., Inc.*, 422 Pa. 124, 221 A.2d 185 (1966) (rules regarding service of process must be construed strictly); Pa. R.C.P. 440 (service of legal papers other than original process is required, albeit allowed by mailing). No finding regarding service or lack thereof is before us other than PNC's representation, the Motions Court did not rest its ruling upon this point, and it has been abandoned by PNC on appeal. *Commonwealth v. Rodgers*, 413 Pa.Super. 498, 605 A.2d 1228, 1239 (1992).

Finally, we express no opinion on the reasonableness of the attorney's excuse for failure to appear. *Cf. Jung v. St. Paul's Parish*, 522 Pa. 167, 560 A.2d 1356 (1989) (balance of the equities); *Anderson, supra* (same); Pa. R.C.P. 218.

14. PNC confines its brief to the following: 1) Ellenbogen's counsel waived his PO's by his failure to appear; 2) his amended complaint failed to include sufficient changes to survive the earlier demurrer. PNC cites only three cases in its brief: one for the standard of review and two for its second issue (one of which had already been cited by the Motions Court in its opinion). Ellenbogen does discuss the threshold question in his brief, but he also cites only three cases: two for the standard of review and one, a case of the Commonwealth Court by which we are not bound, for the threshold issue.

bogen's PO's to PO's waived, Judge Friedman stated, "I'm still stuck anyhow." We take this to mean that the court considered the issue to be non-waivable and one that could properly be raised by the court *sua sponte*.

¶ 19 This method of proceeding was correct. As discussed *infra*, the section of Rule 1028 requiring all objections to be filed at once is mandatory and may not be waived by the court under the guise of Pennsylvania Rule of Civil Procedure 126.[15]

■ ¶ 20 Although it was proper for the court to have raised the question, its ruling on the point of law was in error. It should have maintained its initial refusal to consider PNC's third set of preliminary objections. As the Motions Court recognized, under Pennsylvania Rule of Civil Procedure 1028(b):

> All preliminary objections shall be raised at one time. They shall state specifically the grounds relied upon and may be inconsistent. Two or more preliminary objections may be raised in one pleading.

Pa.R.C.P. 1028(b). Failure to raise any possible grounds in the single allowable set of preliminary objections means that those grounds may not be raised at a preliminary stage. Pa.R.C.P. 1028, 1032. (Whether the grounds are waived for other

purposes depends upon other factors, including Pa.R.C.P. 1030(b) and 1032.)

■ ¶ 21 What the Motions Court failed to recognize, however, was that PNC's motion to strike fell directly into one of the enumerated grounds which must be raised in the single allowable set of preliminary objections. The 30–day deadline for the filing of an amended complaint set by Judge Farino, which Ellenbogen later missed, was a discretionary act made possible by the following rule of court:

> (e) If the filing of an amendment, an amended pleading or a new pleading is allowed or required, it shall be filed within twenty days after notice of the order **or within such other time as the court shall fix.**

Pa.R.C.P. 1028(e) (emphasis added). Here, "such other time" was 30 days.[16] This deadline was a rule of court.[17] PNC's motion to strike for failure to comply with such rule should have been filed and treated as a preliminary objection under the following authority:

> (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
> \* \* \*
>
> (2) failure of a pleading to conform to law **or rule of court**. . . .

---

**15.** Under Rule 126, courts may give a liberal construction to certain procedural rules in order "to secure the just, speedy, and inexpensive determination of every action ..." and may disregard "any error or defect of procedure which does not affect the substantial rights of parties." Pa.R.C.P. 126. The converse is also true.

We find further persuasive support for the court's decision to treat PNC's compliance with Rule 1028 as a non-waivable issue in *Yanko v. Donaldson*, 65 [Pa.] D. & C. 341 (1948), which held the requirement that all preliminary objections shall be raised at the same time is mandatory and may not be waived under Rule 126.

**16.** It was also within Judge Farino's discretion to extend the time he had set for the

filing of the amended complaint by four days, as he did. The court may ignore insubstantial non-compliance with procedural rules not resulting in prejudice, such as rules regarding deadlines. *Paulish v. Bakaitis*, 442 Pa. 434, 441–42, 275 A.2d 318, 321–22 (1971); *Anderson v. Centennial Homes, Inc.*, 406 Pa.Super. 513, 594 A.2d 737 (1991); Pa. R.C.P. 126, 1003. *See also Goldsborough v. City of Philadelphia*, 309 Pa.Super. 347, 455 A.2d 643 (1982). There is no record indication of Judge Farino's reason(s) for denying PNC's Motion to Strike.

**17.** It is irrelevant whether it is Rule of Civil Procedure 1028(e) which is seen as the "rule of court," or the Motions Court's deadline itself as fixed by Judge Farino under the authority of that rule.

Pa.R.C.P. 1028(a)(2) (formerly found at Pa. R.C.P. 1017(b)(2)).[18] We are unaware of any other pre-trial, written motion to strike authorized by our rules.[19]

¶ 22 The Rule 1028(a)(2) ground is well established in Pennsylvania practice. *See Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981) (preliminary objections in the nature of motion to strike for failure to conform to rule of court). *See also Maleski v. Mutual Fire, Marine & Inland Ins. Co.*, 534 Pa. 575, 633 A.2d 1143 (1993) (preliminary objections in the nature of motion to strike); *Kyle v. McNamara & Criste*, 506 Pa. 631, 487 A.2d 814 (1985) (same); *Cianfrani v. Commonwealth, State Employees' Retirement Board*, 505 Pa. 294, 479 A.2d 468 (1984) (same); *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983) (same); *Hudock et al., v. Donegal Mutual Ins. Co.*, 438 Pa. 272, 264 A.2d 668 (1970) (same); *Borough Of Mifflinburg v. Heim*, 705 A.2d 456 (Pa.Super.1997) (same).

¶ 23 The fact that PNC styled its preliminary objections as a motion is irrelevant. At one time, the title under which such a pleading was filed had significance, but it no longer does. The 1991 explanatory comment to amended Rules 1017 and 1028 includes the following commentary:

> Former Rule 1017(b) categorized preliminary objections as a "motion" for certain types of relief, a "petition" for other types of relief, and a "demurrer." The use of these terms was appropriate when the rule was initially promulgated in 1946, enabling practitioners to relate the new rule to prior practice. Today, **the use of the terms "motion" and "petition" in this context creates confusion.** New Rule 1028(a) is phrased in terms of grounds, e.g., insufficient specificity, lack of capacity to sue and legal insufficiency (formerly the demurrer). This is a change in style only.

Explanatory Comment, Rule 1017 (1991) (emphasis added). Such confusion indeed resulted here.

¶ 24 The cases mandate that we uphold the prohibition against filing serial preliminary objections. In 1962, our supreme court was presented with a case in which an out-of-state company was sued; it filed a motion to quash substituted service and dismiss on the grounds that it was not doing business in this Commonwealth and thus did not fall within the substituted service provisions of the Business Corporation Law. *Yentzer v. Taylor Wine Co.*, 409 Pa. 338, 186 A.2d 396 (1962).[20] The court overruled the motion and gave Taylor the opportunity to file preliminary objections, which it did, in the nature of a demurrer. Without leave of court or agreement of the plaintiff, the defendant eight months later filed a second set of preliminary objections contesting personal jurisdiction, and also withdrew its demurrer. At the time, the court had not yet ruled on the set of preliminary objections it had allowed Taylor to file after overruling its motion to quash. When it denied the preliminary objections raising jurisdiction, Taylor appealed. Our supreme court was presented with the issue of the timeliness of Taylor's second, jurisdictional preliminary objections. The court relied upon its conclusion that Taylor had generally appeared and conceded the issue of personal jurisdiction by filing the demurrer, and it found that allowing amendment of

---

**18.** Providing further support for this conclusion is former Rule 1017(b), which more closely matched the phrasing of PNC's motion than does today's version:

> Preliminary objections are available to any party and are limited to
>
> * * *
>
> (2) a **motion to strike** off a pleading because of lack of conformity to law or rule of court. . . .

Pa.R.C.P.1917(b) (rescinded as of January 1, 1992) (emphasis added).

**19.** Petitions to strike judgments under Pa. R.C.P. 2959 and 2967 are sometimes, however, styled as motions to strike.

**20.** On appeal, our supreme court noted that such a motion was improper and should have been raised by way of preliminary objection.

the preliminary objections would have been unfair, since Taylor had obtained neither leave of court nor consent of the opposing party. However, the court also reviewed the rules for preliminary objections set forth above, albeit since slightly amended, and found the defendant had also waived the issue of jurisdiction because it had not included that issue in the single permitted set of preliminary objections:

> In other words, this rule [and its list of grounds] entails the proper procedure by which the defendant may preliminarily assert at one and the same time questions of jurisdiction, as well as errors of form and substance in the complaint.
>
> * * *
>
> The salutory and main purpose of the rules is to reduce the number of dilatory steps (so prevalent and perfectly proper under prior existing rules of procedure), which the defendant may now take advantage of prior to filing an answer on the merits of the action and thus expedite the reasonable disposition of the litigation.

*Id.* at 341–42, 186 A.2d at 398. *See Vant v. Gish*, 412 Pa. 359, 368, 194 A.2d 522, 527 (1963) (overruled on other grounds) ("Rules 1028(b) and 1032 require a defendant to join all his preliminary objections in one pleading.... Otherwise, they will be deemed waived.").

¶ 25 We, too, have considered a similar question. In *Martin v. Gerner*, 332 Pa.Super. 507, 481 A.2d 903, 906 (1984), it was asserted that a prohibited second set of preliminary objections had been filed. After reviewing the law discussed above, we opined: "The basis for the rule that all preliminary objections must be raised at one time is that otherwise the court would have to rule on preliminary objections on a piecemeal basis." *Id.* Looking to this policy, however, we found that the second set of preliminary objections had been filed before the court had ruled on the first, and, thus, that there was still only one dilatory stage. *Id.* No piecemeal rulings were necessary; therefore, we found, waiver had not occurred.[21] *Id. See also Kazanjian v. Cohen*, 175 Pa.Super. 195, 103 A.2d 491, 494 (1953).

¶ 26 The Commonwealth Court takes the same position. In *Lexington Ins. Co. v. Commonwealth, Ins. Dep't*, 116 Pa. Cmwlth. 259, 541 A.2d 834 (1988), that court opined that parties may not defeat the "strong prohibition against a serial raising of objections" by mis-captioning a preliminary objection as something else. *Id.* at 836 (quoting *Goodrich–Amram 2d* § 1017(b):4). The court also therein found that, in the absence of an indication that the objecting party had sought leave to amend their preliminary objections, Rule 126 should not be applied to allow serial preliminary objections. "This rule permits a court to disregard a procedural defect; the rule clearly does not prohibit a court from imposing a sanction for failure to comply with a duly promulgated rule." *Id.* at 837 (citing *Hesselgesser v. Glen Craft Contractors, Inc.*, 287 Pa.Super. 319, 430 A.2d 305 (1981)). *See also Chester Upland School Dist. v. Yesavage*, 653 A.2d 1319, 1324 n. 9 (Comwlth.Ct.1994); *General State Authority v. Lawrie & Green*, 29 Pa.Cmwlth. 567, 372 A.2d 45, 46–48 (1977).

¶ 27 The current edition of *Goodrich–Amram 2d* contains the following more extensive discussion, a stern and directly

---

**21.** Similarly, in *Yentzer, supra,* the permitted set of preliminary objections raising jurisdiction (properly, the second set, as the motion to quash was the first) had been filed before the court had ruled on the set in the nature of a demurrer. When our supreme court opined that amendment of the preliminary objections might possibly have been allowed under Rule 126 had Taylor not waived the issue by entering its appearance, we believe it did so in reliance upon the fact that serial rulings would not have been necessary. *Id.* at 342–43, 186 A.2d at 398. For this reason, our conclusion that once a first set of preliminary objections has been ruled upon, another may not be allowed under the guise of Rule 126, is not in conflict with our supreme court's ruling.

applicable warning based primarily upon published cases of the courts of common pleas:

> Where a defendant fails to raise a particular challenge in its preliminary objections, that challenge is waived. Even where an objection is one which is not waived if not raised preliminarily, a defendant may lose the right to raise it at a preliminary stage if he or she does not follow the strict command of the Rules.
>
> The concept of a single dilatory stage for a defendant is strictly adhered to. Thus, a defendant is totally barred from making any preliminary objection to the pleading when, after a plaintiff's complaint has been filed, the defendant raises a jurisdictional objection, but takes no action with respect to the plaintiff's complaint. The defendant cannot move to strike it off for error of form, or move for a more specific pleading. By not joining these objections with the jurisdictional motion, the defendant has lost these rights forever.

\* \* \*

Although a defendant who fails to raise all preliminary objections at one time waives the right to voice those objections at a preliminary stage, the defendant is not barred from raising those complaints at an appropriate point later in an action. For example, although a defendant might lose the right to demur to a complaint by failing to include a demurrer with other preliminary objections, this does not mean that the defendant concedes, for the entire action, that a plaintiff has pleaded a cause of action. The legal sufficiency of a plaintiff's case remains an open issue, which a defendant may raise in his or her answer; in a preliminary objection to a later pleading, if one is available; in a motion for judgment on the pleadings, after the pleadings are closed; or at trial by motion for nonsuit or directed verdict, or by a motion for judgment n.o.v.

*Goodrich–Amram 2d* § 1028(b):4, 6 (footnotes, "Amram commentary," and "observations" omitted). We specifically adopt and approve this statement of the law.

¶ 28 When PNC filed its motion to strike the amended complaint, it waived all grounds for preliminary objections not included therein. Even if, as in *Martin, supra,* PNC were held not to have waived all other grounds when it merely filed the motion to strike, once the Motions Court had ruled upon that motion, denying it without further instruction, such grounds most certainly were waived for purposes of preliminary filings. It was only after this ruling that PNC filed its second set of PO's to the amended complaint, in direct violation not only of the rule but also of the underlying policy against serial dilatory steps and piecemeal rulings. PNC's second set of PO's to the amended complaint should neither have been filed nor entertained.

¶ 29 We specifically reverse the order of the Motions Court sustaining PNC's PO's to Ellenbogen's amended complaint and dismissing the amended complaint on the basis of PNC's PO's. The amended complaint is reinstated.

¶ 30 There is one central issue yet to be determined. If there is no potential claim, there is no point to a remand. Judge Friedman considered herself bound by the law of the case doctrine and thus did not, it appears, examine whether Judge Farino had sustained the demurrer erroneously.[22] However, our duty is to reverse the dismissal of a case on preliminary objections unless it appears with certainty that the law will not permit recovery by the plaintiff upon the facts

---

**22.** The law of the case doctrine does not nullify the court's obligation to reject a clearly erroneous decision without support in the law which would create a manifest injustice if followed. *Commonwealth v. Starr,* 541 Pa. 564, 575–76, 664 A.2d 1326, 1332 (1995) (quoted in *Baker, supra* at 774). Utter reliance upon an earlier and coordinate judge's decision, without at least considering this standard, is not appropriate.

averred. *McGuire, supra.* We must, therefore, scrutinize under this standard the two counts of the amended complaint: breach of express bailment and negligence.

¶ 31 Accepting as true all well pleaded facts in the complaint, as we must, we note that Ellenbogen's breach of express bailment claim was premised upon the lease agreement between the bank and the deceased, Edgar Ellenbogen.[23] Thus, in order to determine whether the facts would support the breach of bailment claim, we must examine not only the law but also the lease agreement at issue.[24] In pertinent part, it provides:

2. **No one but the lessee, or lessee's duly authorized and designated agents,** or in case of the death, insolvency or other disability, the legal representatives of the lessee **shall have access to the box, except as herein expressly provided.** Access to the box and control of its contents may be had by any one of the lessees and upon the death of any one of the lessees, the right of access to and control of the contents of the box shall pass to the surviving lessees. Any of the lessees is hereby authorized to surrender the box or to exchange the box for any other box or boxes. Each of the lessees agrees that if such exchange is made, any of the lessees is authorized to execute a lease therefor on behalf of the other lessees.

4. Lessor shall under no circumstances be considered as bailee, or otherwise howsoever in control or possession of the contents of the leased box, except as provided in Paragraph Eleven hereof.

8. Lessor will retain no keys. . . .

10. The liability of the lessor in respect to property deposited in the box is limited to **loss caused by neglect to exercise ordinary care and diligence to prevent the opening of the box by any person other than the lessee, or a duly authorized representatives** [sic], and is assumed upon the express agreement that such opening shall not be inferable from proof of loss of any of the contents of the box. **The lessor shall not be liable for any damage caused by any act or neglect of any person or persons not in its employ,** or for failure of any of the vault doors or locks to operate.

11. All rentals of boxes shall be payable in advance, and if possession of the box rented is not given up and its keys returned to the lessor at the date of cancellation hereof, or surrender of the box, or on expiration of this lease or of its renewal, the lessee shall not thereafter be permitted access to the box, but may be debarred therefrom at any time at the option of the lessor. . . .

14. Neither the lessor, nor any officer or employee thereof in a private or official capacity, shall be authorized to act as deputy or agent for the lessee in respect to any matter or thing connected with the box.

(Emphasis added.) The only person named as lessee, representative, or agent in the agreement is Edgar Ellenbogen.

---

23. Ellenbogen claims an express rather than an implied bailment. For this reason, his decision to omit the breach of contract claim from his amended complaint does not bar consideration of the lease agreement.

24. We examine the lease between Edgar and Pittsburgh National Bank dated 1/31/92. It is this lease upon which Ellenbogen's claims are based. The later lease between PNC and both Edgar and Jacqueline is differently phrased. Its terms are irrelevant to our analysis at this stage, for the following reason. The gist of the amended complaint is that the latter lease should never have been permitted to supplant the former, by reason of the bank's duties as set forth in and imposed by the former lease. The only means by which the first lease could have been supplanted or voided by the second is if the second had been entered into properly, which can only be answered by reference to the duties placed upon the bank by the first lease. The terms of the later lease, between PNC and both Edgar and Jacqueline, would only become relevant to the action before us if a determination were first made that the former lease agreement did not prohibit the latter from coming into being in the manner pleaded.

The issue of what constitutes due authorization for purposes of agency or representation is not answered in the lease agreement itself. Damages are not limited by the lease agreement to destruction or alteration of the contents of the box. Despite the somewhat confusing language of paragraph eleven (all of which is to the same effect as the language quoted), it appears a claim in bailment for breach by one of the bank's employees of its duty to prevent anyone but Edgar from opening the box was expressly contemplated by the parties in the agreement.

¶ 32 The only analysis we have before us of whether Ellenbogen's express bailment count states a claim is PNC's PO's in the nature of a demurrer to Ellenbogen's original complaint, sustained without comment by Judge Farino. These rest on paragraph four of the lease agreement, together with the conclusion that since the contents of the box were neither lost, stolen, damaged, or destroyed, but were returned to the Ellenbogen estate, there can be no liability in bailment.

¶ 33 We agree that such would be the case were there no duties placed upon the bank by its agreement (i.e., if Ellenbogen were claiming an implied, rather than express, bailment). *Price v. Brown*, 545 Pa. 216, 680 A.2d 1149 (1996). Here, however, there were express contractual duties. Additionally, as per *Price*, this bailment was for the mutual benefit of the bank (which received an annual rent) and Ellenbogen, making its duty of care one of ordinary diligence and care under the circumstances, one of which was certainly its agreement "to prevent the opening of the box by any person other than the lessee, or a duly authorized representative[ ]." It is this duty which Ellenbogen has alleged was breached.

 ¶ 34 The provisions of paragraph four and the inapplicable modifications

thereto in paragraph eleven [25] do not dissuade us that the essential relationship created under the contract was one of bailment. Our supreme court has noted that it is well settled that the relationship between a bank and the holder of such a box is that of bailee and bailor. *Williams v. Ricca*, 324 Pa. 33, 37, 187 A. 722, 724 (1936). *See also Moon v. First National Bank of Benson*, 287 Pa. 398, 135 A. 114 (1926); *Bernstein v. Northwestern Nat'l Bank*, 157 Pa.Super. 73, 41 A.2d 440 (1945). We cannot uphold a total waiver of the fundamental legal relationship created by the contract. Such a waiver would swallow the bank's duty whole.

¶ 35 We can find no cases specifically concerning the duty of banks to prevent the sort of damages herein alleged. However, we cannot be certain that there was no such duty under this lease. Facially, the lease indicates that the items in the box would be protected not only from damage or utter loss, but also from being accessed by non-authorized parties, regardless of what subsequently happened to the items. It appears that privacy, as well as security, was one of the benefits the bank was under a duty to provide. Contrary to the bank's representations, the lease contract does not limit allowable claims to loss **of items** in the box; instead, more broadly, it recognizes the possibility of "loss **caused by** neglect to exercise ordinary care and diligence to prevent the opening of the box by any person other than the lessee." (Emphasis added.)

 ¶ 36 Accepting as true the averments of the complaint, we cannot say with certainty that the law would not permit recovery under these circumstances. *McGuire, supra.* Such uncertainty mandates reversal at this preliminary stage. There is no need to engage in an analysis of the negligence claim.[26]

**25.** Paragraph ten appears to be the intended referent.

**26.** For clarity of analysis of the express bailment claim, however, we note that the "economic loss" doctrine raised by PNC, as stated in *Aikens, supra,* and later summarized in *General Public Utilities v. Glass Kitchens of Lancaster, Inc.*, 374 Pa.Super. 203, 542 A.2d

¶ 37 We therefore reverse and remand, requiring PNC to file an answer to the amended complaint. As was noted by Ellenbogen in his reconsideration motion, the grounds we have just found were waived for purposes of preliminary objections have not been waived altogether and may be raised by way of later pleading, including an answer.

¶ 38 Case reversed and remanded for proceedings in accord with the foregoing. Jurisdiction relinquished.

567 (1988) and *Public Service Enterprise Group, Inc. v. Philadelphia Electric Co.*, 722 F.Supp. 184, 193 (D.N.J.1989), does indeed "bar a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property." *Public Service Enterprise Group* at 193. However, where, as here, the claim is grounded upon a contractually imposed duty (one of express bailment), the economic loss doctrine, a feature of tort law, is irrelevant. *Id.* at 196–99.