2010 VT 76

**In re Grievance of June ROSENBERG and Vermont State Colleges Faculty Federation, UPV/AFT Local 3180, AFL-CIO**

[11 A.3d 651]

No. 09-199

¶ 1. August 9, 2010. Grievant June Rosenberg appeals a Vermont Labor Relations Board decision rejecting her claims that: (1) employer Vermont State Colleges violated the collective bargaining agreement by assigning a course to a faculty member (K.C.) who did not have a Master's degree or equivalent experience; (2) employer should have given more weight to seniority in assigning courses; and (3) employer discriminated against her based on protected union activity. We affirm.

¶ 2. Grievant received a Bachelor's degree in speech in 1967 and a Master's degree in communications with a specialty in speech pathology in 1973. In November 2008, she received a doctorate degree in educational leadership, although she did not have that degree at the time that employer made the decisions at issue in this case. In 1993, grievant became a part-time faculty member

at Lyndon State College, where she has primarily taught psychology courses. She has more seniority than most part-time faculty members.

¶ 3. Grievant traces the genesis of her current situation to February 2001, when she met with the chair of the psychology department and expressed her dissatisfaction with a summer course being assigned to a less-senior faculty member. Grievant filed a grievance in that case, and employer ultimately assigned the summer course to her.

¶ 4. In the fall of 2001, grievant learned that she would be assigned a spring 2002 schedule that would require her to commute to campus (over an hour from her home) three to four times per week, rather than the once-per-week commute she did in the fall of 2001. She then filed another grievance in February 2002. In a 2-1 decision, the Board held that employer had discriminated against grievant due to her previous grievance activities, but we reversed that decision on appeal. *Rosenberg v. Vt. State Colleges (Rosenberg I)*, 2004 VT 42, 176 Vt. 641, 852 A.2d 599 (mem.). We held that the case "lack[ed] direct evidence of retaliatory motive," *id.* ¶ 13, and that "the Board had no basis from which to infer suspicious timing," *id.* ¶ 15.

¶ 5. From the fall semester of 2002 to the fall semester of 2005, employer assigned grievant courses to teach, and no grievances were filed. During these years, however, tensions appeared to be building between grievant and employer. On March 14, 2005, employer sent grievant a letter signed by all five full-time faculty in the psychology department. The letter was strongly critical of grievant's teaching.

¶ 6. When grievant was not assigned any courses for the spring 2006 semester, she filed another grievance. *In re Rosenberg (Rosenberg II)*, No. 06-10, 29 V.L.R.B. 12 (Feb. 12, 2007), available at http://www.state.vt.us/vlrb/documents/

29VLRB12.pdf. In *Rosenberg II*, the Board recognized that the criticism of grievant in the letter from employer "was unfair" and that the actions by employer were "more indicative of seeking to find fault with an employee than genuinely attempting to address concerns with that employee." *Id.* at 32. Nevertheless, the Board ultimately rejected grievant's claim because she had failed to demonstrate that employer's treatment of her "stemmed in any part from her grievance activities." *Id.* at 33. The Board concluded that grievant had "presented no evidence of [grievant] being treated differently than employees not engaged in grievance activities." *Id.* at 30. Grievant did not appeal the Board's ruling.

¶ 7. Grievant's requests to teach courses continued to be denied, and she has not taught any courses since the fall 2005 semester. These denials led to three more cases that were heard by the Board: *In re Rosenberg (Rosenberg III)*, No. 06-40, 29 V.L.R.B. 169 (July 19, 2007), available at http://www.state.vt.us/vlrb/documents/29VLRB169.pdf; *In re Rosenberg (Rosenberg IV)*, No. 07-16, 29 V.L.R.B. 317 (Dec. 31, 2007), available at http://www.state.vt.us/vlrb/documents/29VLRB317.ord.pdf; and *In re Rosenberg (Rosenberg V)*, Nos. 07-35, 07-39, 07-39, 08-04, 30 V.L.R.B. 63 (July 9, 2008), available at http://www.state.vt.us/vlrb/documents/30VLRB63.pdf. In *Rosenberg III*, the Board held that employer had failed to prove that the person who was assigned a course was an administrator with priority over grievant, and the Board therefore held that employer should have assigned that course to grievant. The Board dismissed the other issues raised by grievant in *Rosenberg III*, as well as all of the claims raised by grievant in *Rosenberg IV* and *Rosenberg V*. Grievant did not appeal any of these rulings.

¶ 8. The current dispute involves three separate grievances, stemming from employer's decisions about course assign-

ments for the spring, summer, and fall semesters of 2008. In each instance, employer did not assign any courses to grievant. Grievant makes three arguments on appeal: (1) employer violated Appendix A of the collective bargaining agreement by assigning the "Basic Reading and Writing" course to K.C. rather than to grievant, even though K.C. did not have a Master's degree; (2) employer violated Section F of Article XVIII by assigning two courses to less-senior part-time faculty members; and (3) employer discriminated against grievant because of her union activity. We conclude that grievant cannot prevail on any of these arguments.

¶ 9. Grievant first argues that it was clearly erroneous for the Board to conclude that employer did not violate Appendix A by assigning the "Basic Reading and Writing" course to K.C. rather than to grievant for the fall 2008 semester. Appendix A, which is titled "minimum degree requirements," reads as follows: "Except for those faculty who were bargaining unit members prior to September 1, 2006, minimum degree requirements for part-time faculty members shall be a Master's degree or equivalent experience in the appropriate field of study." As grievant points out, at the time that K.C. was hired, K.C. did not have a Master's degree, and, according to grievant, K.C. also lacked equivalent experience.

¶ 10. We conclude that any alleged violation of Appendix A is irrelevant because grievant failed to demonstrate that, had employer not hired K.C., grievant would have been assigned to teach this course. As the Board noted, "given the lack of pertinent degrees and experience possessed by [grievant] to teach a remedial reading and writing course," she would not have been assigned this course even if employer had rejected K.C. under Appendix A. This conclusion was supported by testimony from the head of the English department, who stated in no uncertain terms that grievant was unqualified to teach English courses. The department head also stated that, when "we don't have any part-timers [who] are qualified to teach, we advertise." Thus, regardless of whether employer violated Appendix A in hiring K.C., grievant would not have been hired, and grievant therefore cannot prevail on this claim.

¶ 11. Grievant's next argument calls upon the Court to interpret Section F of Article XVIII of the collective bargaining agreement, which reads in relevant part as follows:

> After deciding upon any assignments under Section E, the College shall consider the following factors in deciding whether a part-time faculty member will receive an available assignment.
>
> *Where the following factors are deemed to be equal, seniority,* as defined in subsection (G) below, *will prevail* in available assignments . . . . These factors are: (1) the credentials and qualifications (including sub-specialties and areas of particular expertise) of both current unit members and other available faculty members from within and outside the College; (2) the teaching experience of both current and available faculty members from within and outside the College; (3) evaluations and work performance of unit faculty members; (4) the stated availability of unit faculty members. These decisions shall not be made arbitrarily and capriciously.

(Emphases added.) Grievant has two main arguments supporting the claim that seniority should govern in cases where the more senior faculty member is qualified: (1) the contract should be interpreted in light of the earlier contract and bargaining history; and (2) employer should be estopped from applying the

new seniority language to introductory courses. We agree with the Board's conclusion that both of these arguments are meritless.

¶ 12. We accord "[s]ubstantial deference" to the Board's construction of collective bargaining agreements. *In re Gregoire*, 166 Vt. 66, 72, 689 A.2d 431, 435 (1996); accord, e.g., *In re West*, 165 Vt. 445, 448, 685 A.2d 1099, 1102 (1996) ("Interpretations of collective bargaining agreements are within the particular expertise of the Board, and we review such interpretations with great deference to the Board's expertise."). Here, the Board correctly interpreted the agreement according to its plain meaning and found that it contains no distinction between types of courses in making assignments and provides no reason to consider evidence of any understanding between the parties outside the words of the agreement.

¶ 13. The general rule is that "[a] labor agreement will be interpreted by the common meaning of its words where the language is clear." *In re Cronan*, 151 Vt. 576, 578, 563 A.2d 1316, 1317 (1989) (quotations omitted). Here, the plain language of Section F of Article XVIII unambiguously applies to all courses, without any exception, implicit or explicit, for introductory courses. Section F clearly states that seniority comes into play only when all of the other factors "are deemed to be equal."

¶ 14. Grievant first contends that we should interpret Section F in light of the previous contract, which gave more weight to seniority.[*] Although we have recognized that in some instances an "im-

---

[*] The previous contract provided that teaching assignments "shall be first offered to bargaining unit members on the basis of seniority," academic qualifications, availability and preferences, experience in teaching courses, and curricular needs of the department.

plied contractual provision may arise through established past practices," *In re Cole*, 2008 VT 58, ¶ 13, 184 Vt. 64, 954 A.2d 1307 (quotation omitted), a construction considering such extrinsic evidence may not proceed without first finding ambiguity in the contract. *In re Verderber*, 173 Vt. 612, 616, 795 A.2d 1157, 1162 (2002) (mem.). Here, Section F directly addresses the proper role of seniority in assigning courses, and nothing in past contracts or practices can change the unambiguous language of Section F. As the Board correctly held, any other conclusion "would be improperly remaking the parties' contract."

¶ 15. Grievant also references the bargaining history of Section F. Grievant concedes, as she must, that "on its face" this language in the new contract "indicated that seniority should only be considered when all other qualifications were even." Nevertheless, she argues that we should interpret the requirement that these decisions not be made "arbitrarily and capriciously" as holding that this provision does not apply to introductory courses, and that those courses should therefore be assigned primarily on seniority. Grievant grounds this argument in the contract's bargaining history, but that history undermines her position. At negotiations over Section F of the new contract, the union submitted a counterproposal that would have given greater weight to seniority. Employer rejected this and instead added language prohibiting employer from acting "arbitrarily and capriciously." This bargaining history highlights the fact that the ultimate language incorporated into the contract rejected any special protections that the union sought for seniority, with respect to introductory classes or otherwise.

¶ 16. Grievant's related argument — that employer should be estopped from applying Section F to the assignment of introductory courses — is also meritless. According to grievant, employer implied

during negotiations that Section F would not apply to introductory courses, and employer should now be bound by those promises. But, as discussed, the contract language reveals no such concession by employer. Promissory estoppel is available only when it is necessary to avoid injustice. *Green Mountain Inv. Group v. Flaim,* 174 Vt. 495, 497, 807 A.2d 461, 464 (2002) (mem.). This "is a question of law." *Id.* We conclude here that there is no injustice in enforcing the unambiguous terms of a bargained-for contract.

¶ 17. Grievant's final argument is that employer discriminated against her because of her past union activity — namely, her history of exercising her right to file grievances. As we noted in *Rosenberg I,* when considering a complaint of discriminatory treatment for engaging in protected activity, we employ the analytical framework set forth by the United States Supreme Court: "The aggrieved employee must show that her protected activity was a motivating factor in the employment decision at issue." 2004 VT 42, ¶ 10 (citing *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)). Without direct evidence of retaliation, grievant must make an argument for inferring that employer had an unlawful motive. *Id.* ¶ 11. "Guidelines in examining this question include whether the employer knew of the employee's activity in the union, whether there was a climate of coercion, and whether the timing of discharge was suspect." *Ohland v. Dubay,* 133 Vt. 300, 302-03, 336 A.2d 203, 205 (1975).

¶ 18. Here, the Board correctly noted that, although employer knew of grievant's union activities, grievant failed to demonstrate that the protected activity constituted a motivating factor in the failure to assign her courses. An employer's knowledge of an employee's protected activity is not enough to infer discriminatory motive. *Rosenberg I,* 2004 VT 42, ¶ 12. There must be a nexus between the activity and the adverse ac-

tion; this is grievant's burden, and she did not meet it. Despite the fact that the nonassignment of courses occurred after grievant filed several grievances, she produced no evidence from which the Board or this Court could infer discriminatory motive. This case is ultimately indistinguishable from *Rosenberg I,* where we held that grievant had failed to present enough evidence to prove discrimination. Thus, grievant cannot prevail on this claim.

*Affirmed.*