**Beverly KNIGHT, Appellant**

v.

**SPRINGFIELD HYUNDAI and George Mavroudis and Drive Financial Services, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 18, 2013.
Filed Dec. 2, 2013.

---

William C. Bensley, Philadelphia, for appellant.

Tamara Chasan, Philadelphia, for appellee.

BEFORE: BENDER, P.J., DONOHUE and MUSMANNO, JJ.

OPINION BY DONOHUE, J.:

Beverly Knight ("Knight") appeals from the December 7, 2012 judgment entered by the Court of Common Pleas, Philadelphia County. Upon review, we reverse the decision of the trial court, vacate the judgment entered and remand for further proceedings before the trial court.

This case arises out of the sale of a used Hyundai Sonata to Knight on February 19, 2008 by Springfield Hyundai ("Hyundai"), through its employee, George Mavroudis ("Mavroudis") (the two parties collectively, "Dealer"), and financed by Drive Financial Services ("DFS")[1] (all three parties collectively, "Appellees"). At the time of purchase, Knight signed a Buyer's Order, which generally set forth the details of the sale, and a Retail Installment Sales Contract ("RISC"), which delineated the details of the sale and the financing agreement. The Buyer's Order also contained an arbitration clause on the reverse side of the document, which stated:

16. *Arbitration Agreement:* Upon the occurrence of a claim or dispute by or between Dealership and Customer arising from or relating to the sale, purchase or lease of the above-described motor vehicle or the relationship of the parties, regardless of the theory of liability asserted, either party may elect to submit the claim or dispute to resolution through arbitration and, thereafter, such arbitration shall be administered by the American Arbitration Association ('Association') under its Commercial Arbitration Rules. It is the intention of the parties that the claims or disputes subject to arbitration hereunder shall be construed as broadly as permitted by applicable law and shall include, but are not limited to, those arising from or relating to the enforceability of this agreement, the terms and provisions of the sale, lease, or financing agreements, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing, including, without limitation, claims based upon state and/or federal statutes, contract claims, tort claims, fraud claims, damage claims and/or misrepresentations. Arbitration shall be held before a single arbitrator appointed by the Association. The decision or award of a majority of the arbitrators shall be final and binding upon the parties. Any decision or award rendered by the arbitrators may be entered as a judgment or order in any court having jurisdiction. The Dealership shall advance all of the arbitrators' fees and any arbitration filing fees, which, upon the conclusion of the arbitration proceeding, may be assessed against the non-prevailing party in accordance with applicable law. Attorneys' fees and other costs and expenses may also be assessed in accordance with applicable law. The parties to the agreement further agree that except as set forth hereinabove, each party hereby waives its right to any judicial proceedings. This waiver, and the obligations concerning arbitration set forth above, shall not apply to any small claims action, an action to obtain possession of a vehicle, or to any action to obtain a deficiency judgment after repossession. A 'small claims action' shall be any civil action at law which is covered by the State of _____ Small

---

1. DFS indicates that it is now known as Santander Consumer USA. Because it is referred to by its former name throughout these proceedings and in the caption on appeal, we will continue to refer to it as DFS in our decision.

Claims Rules and as defined in accordance therewith. This agreement is binding upon and inures to the benefit of Customer and Dealership, as well as their successors, assigns and transferees, and to the officers, employees, agents and affiliates of each of them. This agreement will survive payment of Customer's obligations, and any termination, canceling or performance of the transactions between Customer and Dealer. If any part of this agreement to arbitrate is deemed invalid under applicable law, all other parts will nevertheless remain enforceable.

Amended Complaint, 4/5/10, at Exhibit B. The RISC contained no such provision. The RISC did, however, contain an integration clause, which stated: "This Contract contains the entire agreement between you and us relating to this contract." Amended Complaint, 4/5/10, at Exhibit A.

Following her purchase, Knight learned, *inter alia*, that the car had previously been part of a rental fleet, it had multiple prior owners, the mileage of the car as reported to her was inaccurate, and it had previously been in an accident and sustained damage. Knight also learned after the purchase that Dealer did not send the necessary taxes and fees for the recordation of the title and registration in her name, as Mavroudis assured her he would.

In early February 2009, Knight advised DFS that she was canceling the RISC because of Dealer's misconduct, but would retain possession of the vehicle as security against the amounts owed her. According to Knight, sometime in February 2009, DFS nonetheless repossessed the vehicle without notice or warning.

On February 16, 2010, Knight filed a Complaint in the Court of Common Pleas, Philadelphia County. Dealer filed Preliminary Objections to the Complaint on March 15, 2010. Knight then filed an Amended Complaint on April 5, 2010, raising against Appellees the following claims: (I) fraud; (II) breach of contract; (III) negligence; (IV) negligent misrepresentation; (V) breach of fiduciary duty; (VI) violation of the Uniform Commercial Code ("UCC"); (VII) conversion; (VIII) violations of the Fair Credit Extension Uniformity Act ("FCEUA"); and (IX) violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and the Motor Vehicle Sales Finance Act ("MVSFA"). Appellees filed Preliminary Objections to Knight's Amended Complaint on April 22 and May 4, 2010, respectively.[2] Therein, Appellees asserted, *inter alia*, that all claims must be submitted to arbitration pursuant to the agreement in the Buyer's Order; Knight is not entitled to damages for emotional distress; paragraphs detailing similar course of conduct engaged in by Hyundai with other purchasers of the same vehicle is scandalous and impertinent and must be stricken from the Amended Complaint; Knight's UTPCPL claims are barred by the economic loss doctrine and gist of the action doctrine; there is no fiduciary relationship between Knight and DFS, so this count must be dismissed; and Knight is limited to recovering from DFS the amounts she paid pursuant to the RISC.

Knight filed Answers to Appellees' Preliminary Objections on May 4 and 12, 2010, respectively. Therein, she conceded the propriety of dismissing her claims for breach of fiduciary duty and for emotional distress other than for Count I (fraud).

2. The record reflects that in the court below, the same counsel represented Hyundai and Mavroudis, but DFS had separate counsel. One attorney now represents all three appellees on appeal.

Knight opposed Appellees' Preliminary Objections in all other respects. On May 28, 2010, the trial court entered orders sustaining Appellees' Preliminary Objections and transferred the matter to binding arbitration. The trial court further struck with prejudice the paragraphs relating to Hyundai's conduct relating to other purchasers of the vehicle and Counts III (negligence), IV (negligent misrepresentation), V (breach of fiduciary duty), and IX (UTPCPL) of the Amended Complaint, and barred Knight from recovering from DFS more than she paid under the terms of the RISC. On June 8, 2010, Knight filed a motion for reconsideration, which, according to the docket, the trial court marked as moot on July 1, 2010.[3]

The case proceeded to arbitration. On December 29, 2011, the arbitrator entered an award in favor of Knight and against Appellees jointly and severally in the amount of $971.41, which included $2,985.70 in payments that Knight made after the sale of the vehicle less $2,014.29, representing the costs incurred by Hyundai for repairs made after repossessing the vehicle. The arbitrator further required that Appellees pay the costs and fees associated with the arbitration, including reimbursement of Knight jointly and severally for the $375.00 that she had already paid.

Knight filed a motion to vacate the arbitration award on January 30, 2012. Appellees filed a reply in opposition on February 21, 2012. The trial court denied the motion to vacate on September 27, 2012.

On October 24, 2012, Knight filed three notices of appeal to this Court from the trial court's May 28, 2010 orders granting Appellees' Preliminary Objections and its September 27, 2012 order denying her motion to vacate the arbitration award. She timely complied with the trial court's request for a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). On December 6, 2012, this Court issued an Order Per Curiam requiring, *inter alia*, Knight to file with the Superior Court's Prothonotary within 10 days of the Order a certified copy of the record reflecting the entry of judgment. Knight timely complied, submitting proof that she filed a praecipe to enter judgment on December 7, 2012. She acknowledged, however, that the judgment was inaccurate, as it "contain[ed] a mathematical error." [4] Response to Rules to Show Cause, 12/13/12, at ¶ 4. She indicated that she would be filing a petition to revise and amend the judgment within 10 days.[5] On December 24, 2012, this Court entered an Order Per Curiam quashing Knight's appeals of the May 28, 2010 trial court orders as duplicative and unnecessary. The trial court filed its written opinion pursuant to Pa.R.A.P. 1925(a) on February 13, 2013.

On appeal, Knight raises the following issues for our review:

1. Did the [t]rial [c]ourt commit an error of law and abuse of discretion by finding that there was a valid arbitration agreement and compelling

---

3. The order disposing of Knight's motion to reconsider does not appear in the certified record. Its absence, however, does not hamper our review.

4. The judgment entered reflected a total award to Knight of $2,246.41, erroneously including all of the arbitration fees that Appellees were ordered to pay ($1,275.00), as opposed to the amount of said fees owed to Knight ($375.00).

5. At the time of this writing, this Court has not received any documentation revealing that Knight took steps to revise or amend the judgment. Because we are vacating the judgment, however, her failure to provide such documentation to this Court is inconsequential.

arbitration where the forced arbitration provision was not contained within the subject [RISC] in violation of the [MVSFA], was not referenced within the RISC, was excluded by necessary implication by the RISC's reference to and incorporation of the Window Sticker, and the RISC was integrated[?] [A]nd where the arbitrator refused to reconsider said ruling, did said error of law and abuse of discretion deprive [Knight] of a full and fair hearing of her claims, which resulted in an irregularity, which resulted in an inequitable, unjust and/or unconscionable award in derogation of 42 Pa.C.S.A. § 7341?

2. Did the [t]rial [c]ourt commit an error of law and abuse of discretion by compelling arbitration pursuant to a forced arbitration provision, and therefore ceding jurisdiction, but then reserving jurisdiction [*sic*] to dismiss several of [Knight's] claims, including her [UTPCPL] claims[?] [A]nd where the arbitrator refused to reconsider said dismissed claims, did said error of law and abuse of discretion deprive [Knight] of a full and fair hearing of her claims, which resulted in an irregularity, which resulted in an inequitable, unjust and/or unconscionable award in derogation of 42 Pa.C.S.A. § 7341?

3. Did the [t]rial [c]ourt commit an error of law and abuse of discretion by compelling arbitration pursuant to a forced arbitration provision, and therefore ceding jurisdiction, but then reserving jurisdiction to dismiss several of [Knight's] claims, including capping [DFS's] assignee lia-

bility[?] [A]nd where the arbitrator refused to reconsider said assignee liability, did said error of law and abuse of discretion deprive [Knight] of a full and fair hearing of her claims, which resulted in an irregularity, which resulted in an inequitable, unjust and/or unconscionable award in derogation of 42 Pa.C.S.A. § 7341?

4. Did the arbitrator commit an error of law and abuse of discretion in awarding [ ]Appellees a set-off or deficiency, where [ ]Appellees admitted to repossessing and reselling the subject vehicle, but either failed and/or refused to disclose the proceeds of said sale[?] [A]nd did said error of law and abuse of discretion deprive [Knight] of a full and fair hearing of her claims, which resulted in an irregularity, which resulted in an inequitable, unjust and/or unconscionable award in derogation of 42 Pa.C.S.A. § 7341?

5. Did the arbitrator commit an error of law and abuse of discretion in refusing to award statutory damages under UCC Section 9625, where [ ]Appellees admitted to repossessing and reselling the subject vehicle and failed and/or refused to disclose the proceeds of said sale[?] [A]nd did said error of law and abuse of discretion deprive [Knight] of a full and fair hearing of her claims, which resulted in an irregularity, which resulted in an inequitable, unjust and/or unconscionable award in derogation of 42 Pa.C.S.A. § 7341?

Knight's Brief at 6–7.[6]

Knight's first three issues address the trial court's decision relating to Appellees'

6. Because of the manner by which we decide this appeal, we need not address the alleged errors committed by the arbitrator.

Preliminary Objections. Knight asserts that the trial court erred by finding that a valid and enforceable agreement to arbitrate existed, as the arbitration was included solely in the Buyer's Order, not the RISC, and thus was a violation of the MVFSA. *Id.* at 13–19. If a valid arbitration agreement existed, Knight asserts that the trial court improperly granted Appellees' remaining Preliminary Objections, as it was without jurisdiction to do so. *Id.* at 19, 26. Further, Knight argues that even with jurisdiction, the trial court erred by dismissing her UTPCPL claims and limiting DFS's assignee liability. *Id.* at 20–28.

The trial court found that Knight entered into a valid arbitration agreement, as the Buyer's Order and RISC "operate in unison to explain the rights and obligations of the parties." Trial Court Opinion, 2/13/13, at 4. It further found that the RISC pertained only to the financing of the vehicle, and thus its integration clause only superseded any additional agreement relating to the financing of the vehicle. *Id.* at 5. Although not addressed in its written opinion, the record reflects that despite its determination regarding the enforceability of the arbitration agreement, the trial court nonetheless dismissed certain paragraphs and Counts from the Amended Complaint.[7] Trial Court Orders, 5/28/10.

■■ We review a trial court's decision sustaining or overruling preliminary objections for an error of law. *O'Donnell v. Hovnanian Enterprises, Inc.,* 29 A.3d 1183, 1186 (Pa.Super.2011). In so doing, we employ the same standard as the trial court, *to wit,* all material facts set forth in the Amended Complaint and inferences reasonably drawn therefrom are admitted as true. *Id.* "Preliminary objections which

seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." *Id.* (citation omitted).

### Arbitration Agreement

■■ We begin with the trial court's decision to transfer the matter to arbitration pursuant to the arbitration agreement in the Buyer's Order. The question of whether the trial court properly compelled arbitration is subject to a two-part test: (1) Does a valid agreement to arbitrate exist? (2) If so, is the dispute within the scope of the arbitration agreement? *Pisano v. Extendicare Homes, Inc.,* 77 A.3d 651, 654 (Pa.Super.2013).

■■ "Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act." *Id.* at 660 (citation omitted). "Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue." *Id.* at 661. "Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication." *Id.*

The Pennsylvania Legislature enacted the MVSFA in 1947 in an attempt to

> promote the welfare of its inhabitants and to protect its citizens from abuses presently existing in the installment sale of motor vehicles, and to that end exercise the police power of the Common-

---

7. The trial court's failure to address these assertions of error in its written opinion is inexplicable since Knight clearly and unam-biguously raised the arguments in her 1925(b) statement. *See* 1925(b) Statement, 11/23/12, at ¶¶ 2, 11.

wealth to bring under the supervision of the Commonwealth all persons engaged in the business of extending consumer credit in conjunction with the installment sale of motor vehicles; to establish a system of regulation for the purpose of insuring honest and efficient consumer credit service for installment purchasers of motor vehicles; and to provide the administrative machinery necessary for effective enforcement.

69 P.S. § 602. Pursuant to the MVSFA, if a buyer is purchasing a vehicle via installment sale, the contract must be in writing, signed by the buyer and the seller, "and **shall contain all of the agreements** between the buyer and the seller relating to the installment sale of the motor vehicle sold[.]" 69 P.S. § 613(A) (emphasis added).

██ There are no cases interpreting section 613(A) of the MVSFA. Looking at the clear and unambiguous language of the statute, it is apparent that when a buyer makes a purchase of a vehicle by installment sale, the RISC subsumes all other agreements relating to the sale. *See* 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

The trial court points to section 301.4(a)(3) of the Pennsylvania Administrative Code relating to consumer protection in automotive trade industry practices ("the Code") for the proposition that the section "contemplates that there will be more than one document executed in an agreement for the sale of a motor vehicle."[8] Trial Court Opinion, 2/13/13, at 4 n.4. We find the trial court's reliance is

misplaced. First, not all sales of a motor vehicle are made by installment sales agreements, and thus not all sales require that all agreements be contained in a single document, explaining why the Code contemplates multiple documents executed during the sale of a vehicle. There are buyers who purchase vehicles outright from sellers, making one lump sum payment. Under such circumstances, there would be no RISC, and no requirement that a single document contain all of the agreements between the buyer and seller. Furthermore, unlike the MVSFA, section 301.4 is not limited to installment purchases of a vehicle, but instead applies to all motor vehicle sales generally, and thus it is questionable whether we need to read the MVSFA and the Code *in pari materia.* *See* 1 Pa.C.S.A. § 1932 (statutes are *in pari materia* and should, if possible, be construed together as one "when they relate to the same persons or things or to the same class of persons or things").

██ The record reflects that Knight purchased the used Hyundai Sonata from Dealer via installment sale, financed by DFS. Dealer executed and Knight signed both a Buyer's Order and a RISC, both of which contained terms related to the sale of the subject vehicle. Pursuant to Section 613(A) of the MVFSA, however, the Buyer's Order is subsumed by the RISC. Indeed, the RISC itself indicates the same, as the integration clause contained therein states that it is "the entire agreement" between Dealer and Knight. Amended Complaint, 4/5/10, at Exhibit A. The Buyer's Order contained an arbitration agreement, but the RISC did not. Thus, we conclude there was no enforceable arbitra-

---

8. This section makes it unfair competition and unfair or deceptive for a motor vehicle dealer to "[f]ail[ ] to provide a purchaser, at no additional charge, an exact copy of each document required by law to be provided including, but not limited to the agreement of sale, installment sales contract, odometer statement, and warranty and other documents in which legal obligations are imposed on the buyer." 37 Pa.Code § 301.4(a)(3).

tion agreement between Knight and Appellees, and the trial court erred as a matter of law by granting Appellees' Preliminary Objections and submitting the case to binding arbitration.

### Trial Court's Jurisdiction Over Remaining Claims

■ Although we conclude that the trial court erred by enforcing the arbitration clause and sending the matter to binding arbitration, we note that the trial court's decision to retain jurisdiction to decide certain of Appellees' Preliminary Objections while simultaneously deciding that the entire matter was subject to an arbitration agreement was error. "Our decisional law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court." *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1111 n. 5 (Pa.Super.2007) (citing *Smith v. Cumberland Group, Ltd.*, 455 Pa.Super. 276, 687 A.2d 1167, 1171 (1997)). As the trial court found that the entire matter was subject to the arbitration agreement, it necessarily lacked jurisdiction to rule upon the remaining Preliminary Objections raised by Appellees.

### Dismissal of Claims

Because we are remanding for further proceedings before the trial court, we now address Knight's substantive arguments regarding the trial court's decision to dismiss her UTPCPL claims and limit DFS's assignee liability. As the trial court failed to address these issues, we look to Appellees' Preliminary Objections for the basis of their arguments to determine whether the trial court erred.

### UTPCPL Claims

■ By way of background, we observe that the UTPCPL provides a private cause of action for

[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2 (footnote omitted).

The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. The UTPCPL provides a private right of action for anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice.

*Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 66 A.3d 330, 335 (Pa.Super.2013) (emphasis omitted).

Pursuant to the UTPCPL, it is unlawful to engage in "unfair methods of competition" and "unfair or deceptive acts or practices" in the conduct of any trade or commerce. 73 P.S. § 201–3. Relevant to the

case before us, the UTPCPL includes the following in its definition of these unlawful activities:

\* \* \*

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

\* \* \*

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

\* \* \*

(ix) Advertising goods or services with intent not to sell them as advertised;

\* \* \*

(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

\* \* \*

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201–2(4)(v), (vii), (ix), (xi), (xxi).

In their Preliminary Objections, Appellees asserted that pursuant to the gist of the action doctrine, Knight had no cause of action under the UTPCPL, as Appellees' duties to Knight resulted from the alleged breach of contract, not "the larger social policies embodied by the law of torts." Dealer's Preliminary Objections, 4/22/10, at ¶¶ 24–26; DFS's Preliminary Objections, 5/4/10, at ¶¶ 27–31.

 "The gist of the action doctrine bars a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.,* 71 A.3d 923, 931 n. 2 (Pa.Super.2013) (citation omitted). As this Court previously explained:

Although they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Mirizio v. Joseph,* 4 A.3d 1073, 1079 (Pa.Super.2010) (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 14 (Pa.Super.2002)). This doctrine does not preclude an action in tort simply because it resulted from a breach of a contract. "To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Id.* at 1080.

The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

*Id.* (citation omitted).

 Viewing the facts contained in the Amended Complaint as true, as our standard of review requires, we conclude the

gist of the action doctrine does not bar Knight's UTPCPL claims. Of relevance to this issue, Knight alleged the following facts in her Amended Complaint:

- Hyundai made promises through online advertisements, which Mavroudis confirmed over the telephone, for the purchase of a new 2008 Hyundai Gallant that Knight went to purchase for her twin sons' use, but contrary to the advertisements and assurances, she was told she was not qualified for its purchase, and Dealer refused to sell her the new Gallant as advertised (Amended Complaint, 4/5/10, at ¶¶ 22–23, 25–26, 28, 29(s));

- Mavroudis stated that the car she was eligible to purchase, a used 2007 Hyundai Sonata, had only 26,539 miles on it and that the odometer reading was accurate, when in fact this was not accurate, as it was the same amount of miles the vehicle had on it both when Hyundai purchased the vehicle and when it sold the vehicle to two prior owners in 2007, one of whom put several hundred miles on the vehicle when it was in his possession (id. at ¶¶ 29(a), (c), (f), 30(h)-(j), 46, 48);

- Mavroudis told Knight that the vehicle had not been in any prior accidents or previously damaged, which was not true (id. at ¶¶ 29(d), (m), 30(c), 43, 49–50);

- Mavroudis told Knight that the vehicle had only previously been privately owned, had one prior owner, and was obtained by Hyundai in trade, when in fact the vehicle had multiple prior owners and was part of a rental fleet (id. at ¶¶ 29(l), (r), 30(d), (f), (k), 43, 45);

- Mavroudis stated that the vehicle was in good operating condition and free of defects when in fact the vehicle had not been carefully inspected and had existing problems (id. at ¶¶ 29(e), (g), 30(g), 39–40);

- Mavroudis assured Knight that Dealer would submit the necessary information to have the title and registration placed in her name but it failed to do so (id. at ¶¶ 29(i), 30(b), 42);

- Mavroudis told Knight she could refinance the purchase of the vehicle and/or purchase another vehicle after completing six monthly payments, which was not true (id. at ¶¶ 29(o), 30(e), 47);

- Appellees represented that financing was approved and completed when it was not (id. at ¶¶ 29(k), 30(b));

- Dealer claimed the documentary fee they charged was lawful, but it was not (id. at ¶¶ 29(h), 30(a)).

Although she purchased the vehicle pursuant to the contract, the alleged representations by Appellees occurred prior the signing of any contract. Id. at ¶¶ 29–30. Furthermore, the above false advertisements, statements, and assurances are rendered unlawful by sections 201–2(4)(v), (vii), (ix), (xi), and (xxi) of the UTPCPL. These are not masked claims for breach of contract; the gist of the action here is in tort, and the contract is collateral to the matters alleged. See Mirizio, 4 A.3d at 1079–80. As such, the gist of the action doctrine did not warrant the dismissal of Knight's UTPCPL claims.

 Appellees further asserted in their Preliminary Objections that the economic loss doctrine barred Knight's UTPCPL claims, as she alleged damages that were purely economic, and there is no cause of action in tort for loss that is solely economic. Dealer's Preliminary Objections, 4/22/10, at ¶¶ 21–23; DFS's Preliminary Objections, 5/4/10, at ¶¶ 25–26. Our research reveals, however, that our Supreme

Court has defined the economic loss doctrine as providing "no cause of action exists for **negligence** that results solely in economic damages unaccompanied by physical injury or property damage." *Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 604 Pa. 50, 53, 985 A.2d 840, 841 (2009) (quoting *Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa.Super.2003)) (emphasis added).[9] The claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims.

As the gist of the action doctrine and the economic loss doctrine were the only arguments raised by Appellees in their Preliminary Objections in opposition to Knight's UTPCPL claims, the trial court erred as a matter of law by dismissing them from the Amended Complaint.

### DFS's Assignee Liability

 In its Preliminary Objections, DFS asserted that "[a]s a 'holder in due course[,]' [DFS's] liability is limited to amounts paid under the contract." DFS's Preliminary Objections, 5/4/10, at ¶ 42 (citing *Beemus v. Interstate Nat. Dealer Servs., Inc.*, 823 A.2d 979 (Pa.Super.2003)). Thus, according to DFS, Knight was barred from recovering from DFS anything more than she paid to DFS under the RISC. *Id.* at ¶ 43.

Our review of the *Beemus* case reveals that DFS is correct. In that case, this Court undertook to determine what liability, if any, a financing company that had been assigned an installment contract for the plaintiff's purchase of a car had where the seller dealership allegedly violated provisions of the MVFSA. *Beemus*, 823 A.2d at 981–82. As required by Federal Trade Commission ("FTC") regulation 16 C.F.R. § 433.2(a), the RISC involved in that case contained the following provision: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." *Beemus*, 823 A.2d at 980–81. Of relevance to the case before us, this Court found that the FTC regulation (and the RISC) contained only one limitation—the maximum recovery a debtor can recover from the assignee financing company cannot exceed the amounts paid to the financing company under the RISC. *Id.* at 984.

Our review of the record in the case at bar reveals that the RISC in question contains the same required notice as was present in the *Beemus* case. The following appears in bold print and all capital letters at the bottom of the RISC: "NOTICE: ANY HOLDER OF THIS CON-

---

**9.** There are other definitions of the economic loss doctrine. *See, e.g., Debbs v. Chrysler Corp.*, 810 A.2d 137, 164 n. 32 (Pa.Super.2002) (the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."); *Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 188 n. 26 (Pa.Super.1999) (the economic loss doctrine "bar[s] a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property."). Our Supreme Court has accepted the definition of the economic loss doctrine provided in the body of this Opinion. For purposes of completeness, we note that none of these explanations of the doctrine put Appellant out of court on the UTPCPL claims.

SUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." Amended Complaint, 4/5/10, at Exhibit A. As Knight was expressly precluded from recovering from DFS more than the amount she paid pursuant to the RISC, limiting Knight's recovery to that extent is proper.

### Conclusion

Judgment vacated. Order granting Preliminary Objections reversed. Case remanded for further proceedings in accordance with this Opinion. Jurisdiction relinquished.