J-A25033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SUSAN SCHLISMAN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| URBAN SPACE DEVELOPMENT, INC., | |
| Appellee | No. 686 EDA 2014 |

Appeal from the Order January 10, 2014
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: October Term 2013 No. 1852

BEFORE:  DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 17, 2014**

Appellant, Susan Schlisman, appeals from the order of January 10, 2014, which denied her petition to vacate or modify an arbitration award. For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's March 12, 2014 opinion.

> The instant appeal, filed by Petitioner-Appellant Susan Schlisman (hereinafter "Appellant"), emanates from [the trial c]ourt's denial of Appellant's Petition to Vacate or Modify Arbitration Award (hereinafter "Petition") and confirmation of said award in favor of Respondent-Appellee Urban Space Development, Inc. (hereinafter "Appellee").

> The underlying dispute in this matter stems from a June 7, 2007 contractual agreement between [the] parties, the terms of

_____

[*] Retired Senior Judge assigned to the Superior Court.

which called for Appellee to plan and oversee the construction of Smokin' Betty's, a restaurant [that] Appellant wished to open in downtown Philadelphia. Under the terms of the contract, Appellant was to pay Appellee an initial design fee of $18,000, with subsequent payments of $20,000 and $15,252 to be made in return for Appellee's submission of "intermediate" and "final" architectural schematics. In addition, Appellee was to be paid a monthly project management fee of $11,700, and was tasked with procuring finishes and furnishings [for Smokin' Betty's] in accordance with the construction schedule, for which Appellee would ultimately be reimbursed by Appellant. Finally, Appellant agreed to compensate for certain incidental costs incurred by Appellee during the performance of its contractual duties.

A dispute eventually arose between the parties, with Appellant believing that Appellee had neither provided final schematics, nor properly performed its procurement duties. Appellant, in an apparent effort to forcibly rectify these alleged contractual breaches, ceased paying Appellee for its services, which led to Appellee stopping work on the Smokin' Betty's project altogether. Appellee followed this by filing suit against Appellant in the Court of Common Pleas, Philadelphia County on May 27, 2009. Appellant filed preliminary objections to Appellee's Complaint on June 17, 2009, in which Appellant argued (among other things) that the aforementioned contract mandated that the dispute be settled via arbitration, rather than in a court of law, and that the Court of Common Pleas was therefore without jurisdiction to adjudicate Appellee's lawsuit.

Appellee subsequently dismissed the suit without prejudice, via praecipe, and refiled the matter as a claim with the American Arbitration Association (hereinafter "AAA") on August 30, 2009, requesting damages "in excess of $75,000." Appellant responded on April 14, 2012, filing an "Answering Statement and Counterclaim," in which she maintained that Appellee's [c]laim was without merit, requesting that judgment be entered in her favor for an amount in excess of $25,000 exclusive of attorneys' fees, interest, arbitration costs, and deserving of an award of punitive damages.

Pursuant to AAA Rule R-14(a), the AAA subsequently provided the parties with a list of ten individuals who could serve as arbitrators for the matter, as well as each potential arbitrator's resume. The parties ultimately agreed upon Donald

Degus of Degus Construction Consultants, selecting Mr. Degus as the sole arbitrator for the matter. Mr. Degus convened the arbitration hearing on September 6, 2012, holding additional proceedings on September 7, 2012 and February 19, 2013. On September 20, 2013, Mr. Degus entered an award in favor of Appell[ee] in the amount of $115,649.37, and denying all of Appellant's counterclaims; the award was not accompanied with an opinion, findings of fact, or conclusions of law that would explain Mr. Degus reasoning.

On October 20, 2013, Appellant filed [her] Petition in the Court of Common Pleas, Philadelphia County. Appellant stated that Mr. Degus had failed to disclose that, while he was arbitrating the parties' dispute, he was actively managing construction projects and initiating legal actions in connection with his management duties, rather than merely acting as a consultant to such projects. Appellant maintained that [the] nature of these suits, as well as similarities between the kinds of work done by Mr. Degus and that done by Appellee, meant that Mr. Degus harbored an inherent [bias] against Appellant and could not have rendered an impartial arbitration award. In addition, Appellant argued that Mr. Degus had improperly interpreted the terms of the parties' contract, and had made both factual and legal errors, positing that Mr. Degus' failure to find in her favor was clear-cut evidence of his partiality. On this two-pronged basis, Appellant requested that the arbitration award be modified, or vacated in its entirety.

In response, Appellee contended that Appellant had failed to provide a suitable basis for the granting of such relief. Appellee noted that Mr. Degus' resume prominently stated that he was employed as a construction manager, and maintained that there had been extensive dialogue between the two parties before they jointly agreed to the selection of Mr. Degus. Appellee argued that the mere fact that both it and Mr. Degus operated in the same field, and had both filed lawsuits pertaining to construction-related disputes, fell far short of showing that Mr. Degus had been biased against Appellant and had rendered something other than an impartial decision. In addition, Appellee maintained that the bulk of Appellant's argument essentially rehashed the case it had presented at arbitration, and that Appellant was improperly attacking the merits of Mr. Degus' decision.

On January [10], 2014, [the trial c]ourt denied Appellant's Petition and confirmed the arbitration award in favor of Appellee. In response, Appellant filed the instant appeal with the Superior Court of Pennsylvania on January 30, 2014. [The trial c]ourt issued an order on January 31, 2014, directing Appellant to provide a Statement of Errors pursuant to Pa. R.A.P. 1925(b); Appellant's response was received by [the trial court] on February 21, 2014 and is attached to this opinion as Appendix A.

(Trial Court Opinion, 3/12/14, at 1-4) (record citations, footnotes, and some quotation marks omitted).

On appeal, Appellant raises the following questions for our review:

I. Did the [trial] court err in refusing to vacate the arbitration award where the [a]rbitrator failed to disclose that he was suing [o]wners while deciding this arbitration case against an [o]wner demonstrating a conflict, bias and partiality, and an unfair and improper adjudication of the matter causing an unjust, inequitable and/or unconscionable result?

II. Did the [trial] court err in refusing [to] vacate the arbitration award where the [a]rbitrator exceeded his authority by entering an award obviously contrary to the contract terms and applicable law and against the evidence presented at the [a]rbitration showing irregularities and misconduct in the arbitration process causing an unjust, inequitable and/or unconscionable award?

III. Did the [trial] court err in refusing to enter [Appellant's] requested [r]ule to [s]how [c]ause providing for discovery to support the grounds raised in [Appellant's] [p]etition and/or acquire evidence to support reasons to set aside or vacate the arbitration award?

(Appellant's Brief, at 3).

In her first claim, Appellant contends that the trial court erred in refusing to vacate the arbitration award because the arbitrator "was suing

other [o]wners of projects on claims very similar to those raised by the Appellee. This created a positional conflict." (***Id.*** at 20). We disagree.

The arbitrator conducted the arbitration in this matter under the AAA Construction Rules (***see*** Petition to Vacate or Modify Arbitration Award, 10/20/13, Exhibit A at Article 11 § 11.02); thus this matter is governed by the rules for common law arbitration. The standard of review for common law arbitration is extremely limited:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to [statutory arbitration] or [to] a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

> The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law.

***Sage v. Greenspan***, 765 A.2d 1139, 1142 (Pa. Super. 2000), *appeal denied*, 784 A.2d 119 (Pa. 2001) (citations omitted). We note, "Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act." ***Knight v. Springfield Hyundai***, 81 A.3d 940, 947 (Pa. Super. 2013) (citation omitted).

In essence, Appellant alleges that the arbitrator was biased. (*See* Appellant's Brief, at 19-22). However, for an aggrieved party to

> prevail on these grounds, actual fraud must be shown, involving collusion with one of the parties, or misconduct intended to create a fraudulent result. An argument that the arbitrators were prejudiced or partial, or that they reached an award so unjust that it constitutes constructive fraud, will not be heeded. Similarly, an irregularity will not be found simply upon a showing that an incorrect result was reached. An irregularity which requires reversal of a common-law arbitration award refers to the process employed in reaching the result of the arbitration, not to the result itself.

*Gwin Engineers, Inc. v. Cricket Club Estates Dev. Grp.*, 555 A.2d 1328, 1329 (Pa. Super. 1989) (citations and quotation marks omitted).

Here, Appellant has failed to show any evidence of either actual fraud or collusion. Appellant claims that the arbitrator "held himself out as a construction consultant" and did not disclose that he acted as a "[p]roject [m]anager under contracts similar to the Appellee." (Appellant's Brief, at 20-21). However, the arbitrator's resume specifically lists his profession as "Construction Manager, General Contractor". (Memorandum in Support of Answer, 11/12/13, Exhibit G). Thus, Appellant was aware at the time she agreed to the arbitrator that he worked as a construction manager.

Moreover, Appellant has failed to point to any specific actions, other than deciding in favor of the other party, which would indicate any bias on the part of the arbitrator. Appellant must show, and has not, "a direct relationship between a party to an arbitration proceeding and a designated arbitrator . . . such as the existence of a prior employer-employee or

attorney-client relationship, before the requisite partiality of that arbitrator is established." *Land v. State Farm Mut. Ins. Co.*, 600 A.2d 605, 607 (Pa. Super 1991). As the trial court aptly stated,

> a more relaxed standard would invite any dissatisfied claimant to allege partiality on the part of the opposing party's arbitrator and thus require court supervision of arbitration thereby frustrating the purpose of favoring such non-judicial dispute resolution in the first place. Regarding the latter, as already noted, the narrow scope of review afforded to [the trial court] did not allow for an examination of an award on its merits. Thus, while Appellant clearly disputed the substance of [the arbitrator's] determination, it was not [the trial court's] placed to decide whether [the arbitrator's] decision was based upon errors or law or fact.

(Trial Ct. Op., 3/12/14, at 6) (citations, quotation marks, and footnote omitted). Appellant's first claim fails to merit relief.

Appellant's second and third issues fail as well. Because Appellant has not demonstrated that the arbitrator was biased or acted in collusion with Appellee, under our extremely limited standard of review, she has not shown that the trial court abused its discretion or made an error of law in denying her petition to vacate or modify the arbitration award.[1] *See Sage*, *supra* at

---

[1] Appellant's reliance on *Sheehan v. Nationwide Ins. Co.*, 779 A.2d 582 (Pa. Super. 2001), *appeal denied*, 792 A.2d 1254 (Pa. 2001) is misplaced. (*See* Appellant's Brief, at 21). Firstly, *Sheehan* involved statutory arbitration not, as in the present matter, common law arbitration. *See Sheehan*, *supra* at 583. Statutory arbitration has a much broader standard of review than common law arbitration. *See Runewicz v. Keystone Ins. Co.*, 383 A.2d 189, 193-94 (Pa. 1978). Secondly, in *Sheehan*, this Court **affirmed** the denial of a petition to set aside arbitration, finding that the fact that the arbitrator had worked for the appellee some twenty-three years

*(Footnote Continued Next Page)*

1142; **Land**, **supra** at 607; **Gwin**, **supra** at 1329. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2014

---

prior to the arbitration and had not disclosed that fact did not render the arbitrator incompetent. **See Sheehan**, **supra** at 584-85. Thus, **Sheehan** provides no support to Appellant.